1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                       ----oo0oo----

TRAVIS BRANCO;
11                                     NO. CIV. S-10-1242 FCD/EFB
           Plaintiff,
12
      v.                              MEMORANDUM AND ORDER
13
CREDIT COLLECTION SERVICES
14  INC.;

15         Defendant.

16                       ----oo0oo----

17      This matter comes before the court on (1) plaintiff Travis

18  Branco's ("plaintiff") motion for partial summary judgment

19  relating to his claims for violations of the Fair Debt Collection

20  Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, and the

21  California Rosenthal Fair Debt Collection Practices Act

22  ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.* and (2) defendant

23  Credit Collection Services, Inc.'s ("defendant" or "CCS") cross-

24  motion for summary judgment, or in the alternative, partial

25  summary judgment, as to plaintiff's claims pursuant to the FDCPA

26  and RFDCPA.  Plaintiff opposes defendant's motion, and defendant

27
28

1  opposes plaintiff's motion.  For the reasons set forth below,[1]

2  plaintiff's motion is granted in part and denied in part and

3  defendant's motion is granted in part and denied in part.

**BACKGROUND**[2]

5  This dispute arose when plaintiff failed to pay for car

6  insurance provided by Liberty Mutual Insurance Company.  (Pl.'s

7  Statement of Undisputed Facts ["SUF"], filed July 20, 2011,

8  [Docket #19, Attachment 4], ¶ 13.)  On or about November 17,

9  2009, the debt was assigned to defendant for collection.  (Def.'s

10 Statement of Undisputed Fact ["DUF"], filed July 21, 2011,

11 [Docket #22, Attachment 1], ¶ 10.)  In attempt to collect the

12 debt, CCS began making telephone calls to 209-296-4089, the

13 number plaintiff provided Liberty Mutual and Liberty Mutual

14 thereafter provided defendant.  (Id. ¶ 13.)  This was the number

15 for plaintiff's parents' residence.  (SUF ¶ 5.)  Between November

16 19, 2009, and March 26, 2010, defendant attempted to contact

17 plaintiff at the above number fourteen times.  (Id. ¶ 18.)

18 Defendant left the following message on plaintiff's parents'

19 answering machine five times:

20     This is for Travis Branco.  If the intended party
       cannot be reached at this number, please call 800-998-
21     5000, and we will cease further attempts to this
       number.  If you are not the intended party, please hang
22     up at this time.  This message contains private
       information and should not be played in a manner where

23 _____

24     [1]    Because oral argument will not be of material
   assistance, the court orders these matters submitted on the
25 briefs.  E.D. Cal. L.R. 78-230(h).

26     [2]    Unless otherwise noted, the facts herein are
   undisputed.  Where the facts are in dispute, the court recounts
27 plaintiff's version of the facts.  Although, for the reasons set
   forth below, any such disputes do not preclude entry of partial
28 summary judgment.

it can be heard by others...(music)...This call is from
CCS, Credit Collection Services.  This is an attempt to
collect a debt and any information obtained will be
used for that purpose.  For your privacy protection,
please visit our secure website at
www.warningnotice.com to access your personal account
information.  Your file number is 05036201574.  Thank
you.

(DUF ¶ 20.)

The outgoing message on plaintiff's parents' answering machine

states: "You have reached the Branco residence.  Please leave a

message and phone number so that Steve, Sari or Travis may return

your call." (<u>Id.</u> ¶ 19.)  Apparently, plaintiff's parents'

answering machine does not have a function that permits the

listener to skip the message.  (SUF ¶ 8.)

At the time defendant left these message, Travis Branco did

not live at his parents' residence.  (DUF ¶ 21.)  However,

plaintiff's mother, Sari Branco, overheard the content of the

messages.  (SUF ¶ 7; DUF ¶ 9.)  Sari Branco told plaintiff that

an 800 number had been calling and that she did not know who it

was until defendant left the aforementioned message.  (DUF ¶ 23.)

Plaintiff never returned any phone call to CCS, nor did anyone

contact defendant to request it cease calling the number.

(<u>Id.</u> ¶¶ 24-26.)

Plaintiff has moved for partial summary judgment on his

claims for violation of sections 1692b(2) and 1692c(b) of the

FDCPA and Section 1788.17 of the RFDCPA.  (Pl.s Mot. for Partial

Summ. J. ["Pl.'s Mot."], filed July 20, 2011, [Docket #20], at

6:12-13.)  Defendant moves for summary judgment as to each of

plaintiff's claims. (See Def.'s Mot. for Summ. J. ["Def.'s Mot.],

filed July 21, 2011, [Docket #22].)

3

1

2                                    **STANDARD**

3        A motion for partial summary judgment is resolved under the

4   same standard as a motion for summary judgment.  See <u>California</u>

5   <u>v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998).  Summary judgment

6   is appropriate when it is demonstrated that there exists no

7   genuine issue as to any material fact, and that the moving party

8   is entitled to judgment as a matter of law.  Fed. R. Civ. P.

9   56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

10           Under summary judgment practice, the moving party
             always bears the initial responsibility of informing
11           the district court of the basis of its motion, and
             identifying those portions of "the pleadings,
12           depositions, answers to interrogatories, and admissions
             on file together with the affidavits, if any," which it
13           believes demonstrate the absence of a genuine issue of
             material fact.
14

15  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the

16  nonmoving party will bear the burden of proof at trial on a

17  dispositive issue, a summary judgment motion may properly be made

18  in reliance solely on the 'pleadings, depositions, answers to

19  interrogatories, and admissions on file.'"  <u>Id.</u> at 324.  Indeed,

20  summary judgment should be entered against a party who fails to

21  make a showing sufficient to establish the existence of an

22  element essential to that party's case, and on which that party

23  will bear the burden of proof at trial.  <u>Id.</u> at 322.

24       If the moving party meets its initial responsibility, the

25  burden then shifts to the opposing party to establish that a

26  genuine issue as to any material fact actually does exist.

27  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

28  585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.

                                    4

253, 288-89 (1968).   In attempting to establish the existence of
this factual dispute, the opposing party may not rely upon the
denials of its pleadings, but is required to tender evidence of
specific facts in the form of affidavits, and/or admissible
discovery material, in support of its contention that the dispute
exists.   Fed. R. Civ. P. 56(e).   The opposing party must
demonstrate that the fact in contention is material, i.e., a fact
that might affect the outcome of the suit under the governing
law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),
and that the dispute is genuine, i.e., the evidence is such that
a reasonable jury could return a verdict for the nonmoving party,
Id. at 251-52.

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor.   It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
First Nat'l Bank, 391 U.S. at 289.   In resolving the summary
judgment motion, the court examines the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any.   Rule 56(c); SEC v. Seaboard Corp., 677
F.2d 1301, 1305-06 (9th Cir. 1982).   The evidence of the opposing
party is to be believed, and all reasonable inferences that may
be drawn from the facts placed before the court must be drawn in
favor of the opposing party.   Anderson, 477 U.S. at 255.
Nevertheless, inferences are not drawn out of the air, and it is
the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.   Richards v. Nielsen

1   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

2   <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

3   **ANALYSIS**

4   **A.   FDCPA**

5   Plaintiff asserts that defendant violated the following

6   provisions of the FDCPA: (1) § 1692b(2); (2) § 1692c(b);

7   (3) § 1692d; (4) § 1692d(5).   (Pl.'s Complaint ["compl."], filed

8   May 15, 2010, [Docket #1], at 4:9-25.)   Plaintiff alleges that

9   defendant violated these provisions when it called plaintiff

10  fourteen times and left voice messages that were overheard by his

11  parents.   (Pl.'s Mot. at 6:3-18.)   Defendant contends that the

12  messages it left on plaintiff's parent's answering machines

13  contained sufficient warnings regarding the nature of the call

14  such that it is not liable under any of the aforementioned

15  provisions of the FDCPA or the RFDCPA.   (Def.s' Mot. at 1:16-28.)

16  Congress enacted the FDCPA in 1977 to eliminate abusive debt

17  collection practices, to insure that debt collectors who refrain

18  from using abusive debt collection practices are not

19  competitively disadvantaged, and to promote consistent state

20  action to protect consumers against debt collection abuses.

21  15 U.S.C. § 1692e; <u>see</u> <u>also</u> <u>Wade v. Regional Credit Association</u>,

22  87 F.3d 1098, 1099 (9th Cir. 1996) (discussing purpose of the

23  FDCPA).   As such, the statute is liberally construed to protect

24  the "least sophisticated debtor."   <u>Clark v. Capital Credit &</u>

25  <u>Collection Services, Inc.</u>, 460 F.3d 1162, 1171 (9th Cir. 2006);

26  <u>see</u> <u>also</u> <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-19 (2d Cir.

27  1993).   This objective standard "ensure[s] that the FDCPA

28  protects all consumers, the gullible as well as the shrewd . . .

6

1  the ignorant, the unthinking and the credulous." <u>Clomon</u>, 988

2  F.2d at 1318-19.

3      **1.   Section 1692b(2)**

4      Plaintiff and defendant both move for summary judgment on

5  plaintiff's claim under Section 1692b(2).  Plaintiff maintains

6  that defendant violated this section by leaving a voice mail at

7  his parent's house stating that plaintiff owes a debt.  (Pl.'s

8  Mot. at 12:20-13:6.)  Defendant contends that plaintiff's claim

9  under this Section fails because plaintiff has failed to show it

10 was seeking location information in connection with the calls.

11 (Def.'s Mot. at 5:5-14.)  Section 1692b(2) provides that "[a]ny

12 debt collector communicating with any person other than the

13 consumer *for the purpose of acquiring location information* about

14 the consumer shall — (1) identify himself, state that he is

15 confirming or correcting location information concerning the

16 consumer, and, only if expressly requested, identify his

17 employer; (2) not state that such consumer owes any debt.

18 15 U.S.C. § 1692b(2) (emphasis added).

19     In this case, plaintiff's claim fails as a matter of law

20 because he has failed to produce any evidence demonstrating that

21 defendant communicated with a third party "for the purpose of

22 acquiring location information," an essential element of his

23 statutory claim.  <u>Id.</u>  Not only does plaintiff's motion fail to

24 establish that defendant sought location information, but the

25 message itself also contains no indication that defendant sought

26 location information.  (SUF ¶ 14.)  Since plaintiff has failed to

27 produce any evidence establishing an essential element of his

28 claim, his motion for summary judgment on this claim is DENIED

and defendant's motion for summary judgment on this claim is GRANTED.  See Celotex, 477 U.S. 323 (1986). (holding that the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.")

**2.  Section 1692c(b)**

Plaintiff and defendant both move for summary judgment on plaintiff's claim under Section 1692c(b).  Plaintiff contends that, "[b]y choosing to leave three messages on the answering machine, that were then heard by a third party, the [d]efendant[] communicated with a third party in violation" of Section 1692c(b).  (Pl.'s Mot. at 14:24-15:2.)  Defendant argues that it did not violate this section because: (1) the number they dialed was the contact information plaintiff gave Liberty Mutual, and thus, plaintiff "assumed the risk of messages left and overheard"; (2) Plaintiff was the intended recipient of the message which instructed non-intended listener to hang up, and thus, it was improper for any third party to listen to the message; (3) "No one ever contacted CCS to inform CCS that it had the wrong number."  (Def.'s Mot. at 6:1-9:6.)  As set forth below, defendant's assertions regarding this section are unavailing.

Pursuant to Section 1692c(b), "without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer." 15 U.S.C. § 1692a(2) defines a communication as "the conveying of

8

information regarding a debt directly or indirectly to any person through any medium." Voice mail messages from debt collectors constitute communications for purposes of the FDCPA. See e.g., Hosseinzadeh v. M.R.S. Assoc., Inc., 387 F.Supp.2d 1104, 1115-16 (C.D. Cal. 2005); Berg v. Merchants Assoc. Collection Div., Inc., 586 F.Supp.2d 1336, 1341 (S.D. Fla. 2008); Foti v. NCO Fin. Sys., 424 F.Supp.2d 643, 655-56 (S.D.N.Y.2006).

First, defendant's assertions that plaintiff assumed that risk that third parties would overhear the communication, and that defendant cannot be liable because plaintiff never contacted defendant are wholly without merit. Defendant does not point to any provision of the FDCPA, nor does he cite to any authority discussing either any alleged "assumption of the risk" defense, nor does any provision of the FDCPA require the debtor to return phone calls made by a collection agency. For these reasons alone, defendant's contentions in this regard are unpersuasive.

Similarly, defendant's position that it cannot be liable because the message was solely intended for plaintiff and that plaintiff's mother should have refrained from listening when she heard the warning is wholly without merit. First, defendant attempts to support its position by analogizing to Segal v. National Action Financial Servs., Inc., Civ. No. 8:04-2388, 2006 WL 449176 (M.D. Fla. 2006), which held that there is no violation of Section 1692c(b) when a person, other than the debtor, opens mail the collector sent to the debtor. Defendant maintains that there is no violation here because, like opening a letter addressed to another, "it was [also] improper for anyone to listen to Mr. Branco's message without his permission."

9

1   (Def.'s Mot. at 7:27-28.)  <u>Segal</u>, however, is inapposite.  First,

2   "[t]he potential for abuse or harassment by debt collectors is

3   far greater in telephone calls than in written communications."

4   <u>Johnson v. NCB Collections Services</u>, 799 F.Supp. 1298, 1303

5   (D.Conn.1992).  Thus, the court scrutinizes verbal communications

6   to third parties to a greater extent than written communications.

7   Moreover, contrary to defendant's contention, deliberately

8   opening another person's mail is not logically equivalent to

9   inadvertently hearing a message left for another person on one's

10  own answering machine.

11      Defendant cites to no authority supporting its proposition

12  that a person must refrain from listening to a voice message in

13  his or her own home merely because the message is for another

14  person.  Indeed, the weight of the case law militates strongly in

15  favor of the inverse conclusion.

16      First, in <u>Berg v. Merchants Assoc. Collection Div., Inc.</u>,

17  586 F.Supp.2d 1336, 1338-39 (S.D. Fla. 2008),[3] defendant

18  collection agency left a voice message[4] strikingly similar to

19  that left by defendant here, which Berg's father, step-mother and

20

21      [3]  The court acknowledges that the procedural posture of
22  <u>Berg</u> is different than that of this case.  More specifically,
    <u>Berg</u> was decided on a motion to dismiss, not a motion for summary
23  judgment.  Nevertheless, the legal principles established by <u>Berg</u>
    are persuasive and particularly applicable to the facts of this
24  case.

25      [4]  The message left in <u>Berg</u> stated as follows: "Hello.
    This message is for Thomas Berg.  If you are not the person
26  requested, disconnect this recording now.  By continuing to
    listen to this recording you acknowledge that you are the person
27  requested.  This is MAF collection services.  We are expecting
    your call at 1-800-749-7710.  This is an attempt to collect a
28  debt.  Any information obtained will be used for that pupose."
    <u>Berg</u>, 586 F.Supp.2d at 1339.

neighbor heard.  As is the case here, "Defendant left messages at
the [p]laintiff's home with a warning to the listener to
disconnect if the listener was not the [p]laintiff, and that
continuing to listen to the message indicates that the listener
was [p]laintiff." Id. at 1343.  The court held that merely
giving the warning that the party listening should hang up if not
the plaintiff, does not shield a debt collector from liability
under Section 1692c(b) when a third party overhears the message.
Id.  Similarly here, for the same reasons, defendant's contention
that the warning on the message shields it from liability is
ineffectual.

     The District court of Minnesota's recent holding in Zorman
v. J.C. Christensen & Associates, Civ. No. 10-3086, 2011 WL
1630935 (D.Minn. 2001) is similarly instructive.  In Zortman,
defendant left messages on plaintiff debtor's voicemail, which
plaintiff's children overheard. Id. at *1.  Defendant asserted,
as does defendant in this case, that it was not liable under
Section 1692c(b) for communicating with a third party because
they did not "purposefully or deliberately make disclosures to a
third party." Id. at *2.  The court explained that reading an
intent requirement into the statute would be "inconsistent with
the ordinary meaning of 'to communicate,'" and thus, held that
the Section 1692c(b) does not require a deliberate act. Id. at
*5.  The court noted that the "FDCPA is a strict liability[5]
statute, which conflicts with requiring deliberate or purposeful

---

     [5]    The FDCPA and the RFDCPA are "strict liability"
statutes.  See Clark v. Capital Credit & Collections Servs., 460
F.3d 1162 (9th Cir. 2006).

1   intent." Id. (Citing Picht v. Jon R. Hawks, Ltd., 236 F.2d 446,

2   451 (8th Cir. 2001).)

3       Similarly here, the fact that plaintiff was the intended

4   recipient of the message and that the message instructed non-

5   intended listeners to hang up does not absolve defendant of

6   liability for communicating information about the plaintiff's

7   debt to a third party.  Defendant is strictly liable under

8   Section 1692c(b) for communicating with a third party —

9   plaintiff's mother — without the debtor's consent, regardless of

10  whether the communication was deliberate or intentional.  Zorman,

11  2011 WL 1630935 at *5; see also Clayson v. Rubin & Rothman LLC,

12  751 F.Supp.2d 491 (W.D.N.Y. 2010) (holding that communicating

13  twice with debtor's mother about the debt without the debtor's

14  authorization violated section 1692c(b).)

15      Defendant also relies on staff commentary from the Federal

16  Trade Commission ("FTC") — the agency charged with enforcing the

17  act — which states that "[a] debt collector does not violate this

18  provision when an eavesdropper overhears a conversation with the

19  consumer, unless the debt collector has reason to anticipate the

20  conversation will be overheard." (Def.'s Opp'n at 8:10-14.)

21  Defendant's reliance on the agency's commentary is misplaced.

22  The Berg court, in analyzing the same commentary, stated that

23  "[t]he example given here by the FTC suggests that the FDCPA is

24  violated by debt collectors who leave message for consumers while

25  aware that the message may be heard by others." Berg, 586

26  F.Supp.2d at 1342.  In this case, defendant had reason to

27  anticipate that the conversation would be overheard — the

28  outgoing message specifically states that plaintiff is not the

12

1    only resident at the home.  (SUF ¶ 6.)   To this end, not only

2    does the agency's commentary not help defendant, it actually

3    supports the finding of liability in this instance.

4         In summary, the court DENIED defendant's motion for summary

5    judgment GRANTS plaintiff's motion for partial summary judgment

6    with respect to violations under Section 1692c(b) of the FDCPA.

7         **3.    Section 1692d and Section 1692d(5)**

8         Defendant moves for summary judgment as to plaintiff's

9    claims under Section 1692d,[6] arguing that the messages left by

10   its agent were in no way "harassing, oppressive, or abusive."

11   Therefore, defendant maintains, the messages did not violate

12   Section 1692d, or any subsection therein.   Plaintiff contends

13   that defendant violated this section by calling plaintiff

14   fourteen times over a fourth month period and causing plaintiff's

15   "telephone to ring repeatedly and continuously with the intent to

16   annoy, abuse and harass [p]laintiff."  (Compl. ¶ 24.)

17        Section 1692d(6) states, in relevant part, that:

18        A debt collector may not engage in any conduct the
          natural consequence of which is to harass, oppress or
19        abuse any person in connection with the collection of a
          debt.  Without limiting the general application of the
20        foregoing, the following conduct is a violation of this
          section: . . .(5) . . . . Causing a telephone to ring or
21        engaging any person in telephone conversation
          repeatedly or continuously *with intent* to annoy, abuse,
22        or harass any person at the called number.  (Emphasis
          added).
23
24        In the context of collection calls, "[w]hether there is an

25   actionable harassment or annoyance turns not only on the volume

26   of calls made, but also on the pattern of the calls."  Joseph v.

27   ─────────────────────

28        [6]    Plaintiff does not move for summary judgment as to this
     claim.

<u>J.J. MacIntyre Companies</u>, 281 F.Supp.2d 1156, 1168 (N.D.Cal. 2002).  For example, where the "collection agency's employees had made more than 90 calls to consumer's home, the content of the calls had been harassing in nature, employees had failed to identify themselves when called, had allowed the phone to ring repeatedly and called back immediately after consumers hung up the phone raised fact issues as to whether employees' conduct was offensive, precluding summary judgment."  <u>Arteaga v. Asset Acceptance, LLC</u>, 733 F.Supp.2d 1218, 1227 (E.D.Cal. 2010). Moreover, the court looks to whether the calls were made to debtor's work place or to debtor's residence at inconvenient hours.  <u>Id.</u>  Finally, the court looks to the number of calls made and whether the calls were made numerous times in the same day or within a short period of time.  <u>Id.</u>

None of the egregious types of conduct identified above are present in this case.  Plaintiff presents no evidence that defendant called his place of employment, called at odd hours, called continuously, or conveyed any misleading information. Moreover, there is no evidence defendant caused plaintiff's telephone to ring continuously or repeatedly engaged any person in telephone conversations with the intent to annoy or harass. 15 U.S.C. § 1692d(5).  Indeed, defendant never actually spoke with anyone, it merely left messages at the phone number its client provided it to contact plaintiff.

Numerous courts construing Section 1962d have held that more egregious conduct on behalf of credit collection agencies is not sufficient to maintain a viable claim under Section 1962d.  For example, this court, in <u>Arteaga</u>, held that "'daily' calls alleged

by [plaintiff] failed to raise a genuine issue of material fact as to whether the communications were so frequent as to be unreasonably or to constitute harassment under the circumstances."; in <u>Arteaga</u>, 733 F.Supp.2d at 1229; <u>see also</u> <u>Jiminez v. Accounts Receivable Mgmt.</u>, Civ No 09-970, 2010 WL 5829206 at *6 (C.D. Cal. 2010) (granting defendant collection company summary judgment because there was no evidence of defendant's intent to annoy, abuse or harass where defendant placed sixty-nine calls over a 115 day period, placed more than two calls in a day, but did not make calls to defendant's work, and never received a response to defendant's voice messages); <u>compare</u> <u>Joseph</u>, 281 F.Supp.2d at 1156 (N.D. Cal. 2003) (holding that 75 calls made to plaintiff's residence created genuine issue of fact as to whether collector's calls were part of a pattern of harassing conduct; <u>Horkey v. J.V.D.B. & Associates, Inc.</u>, 333 F.3d 759 (7th Cir. 2003) (upholding statutory damages under § 1692d for collection agency's phone calls to plaintiff at her place of employment).

Similarly, here, fourteen calls over a period of four months, where the majority of the calls were placed approximately *once every seven days* is not sufficient to establish that "the natural consequence" of defendant's calls was to "harass, oppress or abuse" plaintiff.  (DUF ¶ 18.)  On these facts, "the [c]ourt concludes that any reasonable juror would only find that [defendant] placed its calls to [p]laintiff with the intent to reach [him] to collect the [d]ebt, and not because it intended to annoy, abuse, or harass [him]." <u>Jiminez</u>, 2010 WL 5829206 at *6.

Moreover, plaintiff's own actions, or lack thereof, supports

granting defendant summary judgment on this claim.  More

specifically, neither plaintiff nor the other residents of the

home ever returned any of defendant's calls.  See Tucker v. The

CBE Group, Inc., 710 F.Supp.2d 1301 (M.D. Fla 2010) (granting

debt collector defendant summary judgment were defendant made 57

calls to plaintiff, including seven calls in one day, because the

debt collector never spoke to the debtor, was never asked to

cease calling, and never called back on the same day it left a

message.)

    Accordingly, the court GRANTS summary judgment in favor of

defendant on plaintiff's Section 1692d and 1692d(5)

**B.   RFDCPA**

    Plaintiff alleges four claims under the RFDCPA:

(1) § 1788.17; (2) § 1788.11(d); § 1788.11(e); § 1788.12(b).  The

arguments of both parties regarding plaintiff's claims under the

RFDCPA essentially mirror those arguments in support of their

respective motions on plaintiff's claims under the FDCPA.  In

addition to those arguments, however, defendant contends that the

RFDCPA "applies only to attempts to collect a debt that arises

from a credit transaction." (Def.'s Mot. at 15:3-5.)  Defendant

contends that this is not a consumer debt arising from a credit

transaction because it involved the prepayment of auto insurance.

(Id. at 15:7-11.)

    The RFDCPA only applies to consumer debts that arise from a

credit transaction.  Cal. Civ. Code § 1788.29(e)-(f).  The RFDCPA

defines a consumer credit transaction as one "in which property,

services or money is acquired on credit."  Id. § 1788.2(e).  In

other words, under California law, "there is a consumer credit

16

transaction when the consumer acquires something without paying for it." <u>Gouskos v. Aptos Village Garage, Inc.</u>, 94 Cal.App.4th 754, 759 (2001).

In this case, Liberty Mutual Insurance provided plaintiff car insurance for which he did not pay.  As such, Liberty now seeks to recoup the debt owed for the auto insurance previously provided but plaintiff did not pay for.  Such a consumer debt is subject to the RFDCPA.

**1.   Section 1788.17**

Plaintiff moves for summary judgment as to his claim under Section 1788.17, asserting that violations of the FDCPA also constitute violations of California's RFDCPA.  Therefore, plaintiff asserts defendant necessarily violated the RFDCPA when it violated the FDCPA.  Defendant contends it did not violate the FDCPA and therefore did not violate the RFDCPA.  In order to promote consistent state action, the RFDCPA incorporates the majority of the FDCPA in California Civil Code § 1788.17.  Section 1788.17 states:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

Therefore, claims asserted under the FDCPA constitute violations of the RFDCPA.  Cal. Civ. Code § 1788.17.  Accordingly, a plaintiff who recovers under the FDCPA is entitled to damages under the corresponding section of the RFDCPA.  Cal. Civil Code § 1788.30(a).  Such recovery is not improper "double recovery." <u>See</u> Cal. Civ. Code § 1788.32 ("remedies provided herein are

17

intended to be cumulative . . . ."); <u>Adams v. CIR Law Offices,</u>
<u>LLP</u>, 2007 WL 2481550 (S.D. Cal. Aug. 29, 2007).

As set forth above, defendant violated Section 1692c(b) of
the FDCPA, and thus, violated Section 1788.17 of the RFDCPA.
Thus, plaintiff is entitled to statutory damages pursuant to
§ 1788.17, for the same reasons as set forth above.

### 2.   Section 1788.11(d) and 1788.11(e)

Defendant moves for summary judgment as to plaintiff's
claims under Section 1788.11(d) and (e),[7] arguing that it is not
liable under these provisions because it did not call plaintiff
with the intent to annoy or harass plaintiff.  Section 1788.11(d)
states that a debt collector must refrain from "[c]ausing a
telephone to ring repeatedly or continuously to annoy the person
called."  Similarly, Section 1788.11(e) proscribes
"[c]ommunicating, by telephone or in person, with the debtor with
such frequency as to be unreasonable and to constitute an
harassment to the debtor under the circumstances."

As set forth above, the court finds as a matter of law that
defendant's conduct did not arise to the level of harassment such
that defendant violated Section 1692d of the FDCPA.  For the same
reasons, defendant did not violate either Section 1788.11(d) or
1788.11(e).  Accordingly, defendant's motion for summary judgment
as to plaintiff's claims under RFDCPA Sections 1788.11(d) and
1788.11(e) is GRANTED.

---

[7]   Plaintiff does not move for summary judgment as to its
claims under these sections.

3.   **Section 1788.12(b)**

Defendant moves for summary judgment[8] on plaintiff's claim under Section 1788.12(b) of the California Civil Code, arguing that it is not liable under Section 1788.12(b) because it did not intend to communicate information to a third party and because plaintiff lived with his parents when defendant left messages at their home.   In essence, defendant asserts a bona fide error defense.   Plaintiff contends that lack of intent is no defense to the violation.

Section 1788.12(b) of the RFDCPA prohibits "[c]ommunicating information regarding a consumer debt to any member of the debtor's family, other than . . . the parents or guardians of the debtor who is a minor or who resides in the same household with such parent."   As previously stated, both FDCPA and the RFDCPA are "strict liability" statutes.   <u>See</u> <u>Clark</u>, 460 F.3d 1162. However, under Section 1788.30(e) of the RFDCPA, a debt collector who violates any provision of the Act will not be liable "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted *notwithstanding the maintenance of procedures reasonably adopted to avoid any such violation*."   (emphasis added)

In this case, it is undisputed that plaintiff did not live with his parents at the time defendant placed calls to plaintiff's parents' home.   (DUF ¶ 21.)   Therefore, defendant cannot avail itself of the statutory exception for minors who reside in the same household as the parent.   Moreover, defendant

---

[8]   Plaintiff does not move for summary judgment on this claim.

1   cannot take refuge in the protection provided by Section

2   1788.30(e) because it has provided no evidence that it has

3   maintained "procedures reasonably adopted to avoid such

4   violation," as expressly required by the statute.

5        In this case, defendant is liable for violating Section

6   1788.12(b) for the same reasons defendant is liable for violating

7   Section 1692c(b) of the FDCPA — namely, for communicating

8   information regarding plaintiff's debt to his parents without the

9   debtor's permission.  Accordingly, defendant's motion for summary

10  judgment as to plaintiff's claim under Section 1788.12(b) is

11  DENIED.

12  **C.   Emotional Distress Damages Under the FDCPA and RFDCPA**

13       Defendant moves for summary judgment as to plaintiff's claim

14  for emotional distress damages pursuant to the FDCPA and RFDCPA,

15  arguing plaintiff cannot establish the requisite elements for a

16  state law claim of intentional infliction of emotional distress

17  ("IIED"), and thus, cannot maintain a claim for emotional

18  distress damages under the statutes.  (Def.'s Mot. at 17).

19  Plaintiff opposes defendant's motion, arguing that he "suffer[ed]

20  stress as a result of the intentional actions of the [d]efendant

21  who knowingly disclosed his indebtedness to third parties.

22  (Pl.'s Opp'n to D.'s Mot. for Summ. J., filed Aug. 4, 2011,

23  [Docket #23], at 22).

24       Under the FDCPA and RFDCPA, plaintiff may recover in

25  addition to statutory damages, actual damages, including damages

26  for emotional distress, sustained as a result of defendant's

27  conduct in violation of the statutes.  15 U.S.C. §1692k(a)(1);

28  Cal. Civ. Code § 1788.17.  Here, plaintiff does not claim any

out-of-pocket losses or other actual damages, except damages for alleged emotional distress she sustained as a result of defendant's conduct.

District courts are split over whether a plaintiff's claims for emotional distress damages under the FDCPA are evaluated under the state law governing the tort of IIED or some lower standard.[9]  This court, however, has held that the a plaintiff "must establish the elements of a claim for IIED under state law in order to sustain a claim for emotional distress and damages under the FDCPA and RFDCPA." Costa v. Nat'l Action Fin. Serv., 634 F.Supp.2d 1069, 1078 (E.D.Cal. 2007).

Under the more lenient approach, courts have concluded that an FDCPA plaintiff does not need to meet state law standards for IIED in order to recover emotional distress damages for an FDCPA violation. See e.g., Panahiasl v. Gurney, Civ. No. 04-4479, 2007 WL 738642 at *1 (N.D. Cal. 2007); see also Foster v. D.B.S. Collection Agency, Civ. No. 01-514, 2006 WL 3491867 (S.D. Ohio 2006); McGrady v. Nissan Motor Acceptance Corp., 40 F. Supp. 2d 1323, 1338-39 (M.D. Ala. 1998). Under this approach, courts instead have analogized the FDCPA to the Fair Credit Reporting Act ("FCRA"). Panahiasl, 2007 WL 738642 at *1-2. "Under the FCRA, a statutory scheme very similar to the FDCPA, a plaintiff who proves a violation of the [A]ct is entitled to actual damages for emotional distress arising from the violation, without first having to prove a right of action under state law." Id. at *2. Applying this rational, courts hold that when a violation of the

_____

[9]    The Ninth Circuit has not ruled on this issue.

FDCPA has been established, actual damages for emotional distress
can be proven independently of state law requirements; a
plaintiff need not prove state law tort elements to be
compensated for their emotional distress. <u>Id.</u> However, a
plaintiff must demonstrate more than transitory symptoms of
emotional distress and unsupported self-serving testimony by a
plaintiff is not sufficient. <u>Wantz v. Experian Info. Systems</u>,
386 F.3d 829, 834 (7th Cir. 2004); <u>Cousin v. Trans Union Co.</u>, 246
F.3d 359, 371 (5th Cir. 2001).

Alternatively, other courts require a plaintiff to prove a
claim for IIED under state law in order to collect damages for
emotional distress. <u>See</u> <u>Pflueger v. Auto Finance Group, Inc.</u>,
1999 WL 33738434 at *4 (C.D. Cal. 1999); <u>cf.</u> <u>Carrigan v. Central</u>
<u>Adjustment Bureau, Inc.</u>, 502 F. Supp. 468, 470-71 (N.D. Ga. 1980)
(holding plaintiff's claim for intentional infliction of mental
distress arising from violations of the FDCPA met state
requirements under Georgia tort law); <u>Venes v. Professional</u>
<u>Service Bureau, Inc.</u>, 353 N.W.2d 671, 674-75 (Minn. Ct. App.
1984) (finding plaintiff satisfied state elements of IIED and
could thus recover emotional distress damages.) Under California
law, to prove a claim for IIED, a plaintiff must show: (1)
extreme and outrageous conduct by the defendant; (2) with intent
to cause plaintiff emotional distress; (3) severe emotional
distress suffered by plaintiff; and (4) defendant's conduct
actually and proximately caused plaintiff's severe emotional
distress. <u>See</u> <u>Davidson v. City of Westminster</u>, 32 Cal. 3d 197,
209 (1982) (enumerating elements of IIED under California law);
<u>see</u> <u>also</u> <u>Pflueger</u>, 1999 WL 33738434 at *4 (listing elements of

22

IIED plaintiff must prove to succeed in claims arising under FDCPA and RFDCPA).

This court finds persuasive those cases requiring a plaintiff to establish the elements of a claim for IIED under state law in order to sustain a claim for emotional distress damages under the FDCPA and RFDCPA.  First, Section 1692 *et seq.* contains no indication Congress intended to create a more lenient IIED standard in enacting the FCDPA.  Moreover, the FDCPA expressly requires *definable actual* damages to recover above and beyond statutory limit.  15 U.S.C. § 1692k(a)(1).  The court finds that the standards for a state IIED claim establish rational standards that ensure that the alleged damages are actual and quantifiable.

Here, plaintiff cannot establish the requisite elements of a claim for IIED.  Indeed, plaintiff does not discuss application of the facts to the state law standard for IIED in her opposition; on that basis alone, the court could grant the motion in defendant's favor.  However, the court nonetheless discusses its findings.

The subject conduct does not rise to the level of "extreme and outrageous" conduct as a matter of law.  At most, plaintiff alleges conduct that may have inconvenienced plaintiff, if that; significantly, the conduct occurred in only five voice mail messages which were not rude, misleading or abusive.  Such conduct is not actionable as an IIED claim.  Cole v. Fair Oaks Fire Prot. Dist., 43 Cal.3d 148, 155 (1987) ("Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" are not actionable as "outrageous conduct").

23

Moreover, specifically in collection cases, courts have long recognized that the very nature of collection efforts often cause a debtor to suffer emotional distress.  See Bowden v. Spiegel, 96 Cal. App. 2d 793, 789 (1950).  To be actionable as an IIED claim, however, the conduct must go beyond "all reasonable bounds of decency."  Id.; see also Ross v. Creel Publishing, 100 Cal. App. 4th 736, 746-47 (2003).  The conduct here simply does not meet this threshold.

Additionally, the court notes that in this case, neither plaintiff nor his parents returned any of defendants calls.  This is not a case in which the debt collector repeatedly called and harassed a plaintiff despite being asked not to call.  Here, plaintiff could have chosen to stop the contact altogether but did not do so.

Furthermore, plaintiff cannot demonstrate he suffered "extreme emotional distress."  Plaintiff claims only that he experienced "stress" as a result of the messages left on his parent's answering machine; he has not, however, seen any medical professionals as a result of his alleged aliments and does take any medications, prescription or over-the-counter.  Such failure to acknowledge this symptom required any treatment does not evidence extreme distress.  Girard v. Ball, 125 Cal. App. 3d 722, 787-788 (1981).  In Girard, the plaintiff claimed emotional distress after a debt collector attempted to collect on a debt against him by making phone calls and sending collection letters. The plaintiff claimed he "couldn't sleep" and suffered from "anxiety symptoms" and nervousness, but he sought no treatment for his condition.  Id.  Although subsequently the debtor claimed

24

more extensive symptoms, the court held that emotional distress

damages could not be sought for such "trivial" and "transitory"

claims.  Id.  Such is also the case here.

Finally, even were the court to consider plaintiff's claims

under a lower standard, neither the messages alone nor the phone

calls made by defendant rises to the level necessary for

plaintiff to recover emotional distress damages.  Even those

courts that have concluded that an FDCPA plaintiff need not meet

state law standards for IIED, nonetheless require more than

transitory symptoms of emotional distress for a plaintiff to

recover damages.  See Wantz, 386 F.3d at 834; Cousin, 246 F.3d at

371.  For example, in Wantz, the court illustrated the types of

"conclusory allegations" that do not permit emotional distress

damages under the FDCPA:

> Wantz's only evidence as to emotional distress was his
> testimony that: (1) he was 'humiliated and embarrassed'
> every time he was rejected for credit;' (2) it is
> 'mentally and emotionally distressful when dealing with
> credit reporting agencies;' and (3) it is 'embarrassing
> to go somewhere and have them check your credit report and
> see all that stuff on there' . . . Without further evidence
> to buttress those assertions, Wantz's case [can]not go
> forward.

386 F.3d at 834.  Similarly, in Cousin, the court described the

types of evidence necessary to support a claim for emotional

distress damages, stating that a plaintiff alleging intangible

loss must set forth evidence with specificity which includes

"corroborating testimony or medical or psychological evidence in

support of the damage award."  246 F.3d at 371 (emphasis added);

see accord Dawson v. Washington Mutual Bank, 390 F.3d 1139, 1149-

50 (9th Cir. 2004) (noting that "[n]on-experts, such as family

members, friends, or co-workers, may testify to manifestations of

mental anguish and clearly establish that significant emotional harm occurred").

Here, the only evidence of plaintiff's emotional distress is his own testimony, and this testimony demonstrates that his alleged emotional distress was transitory in nature and of the type not recoverable under the FDCPA. While plaintiff is not required to present expert testimony in support of his claim, Zhang v. American Gem Seafoods, 339 F.3d 1020, 1040 (9th Cir. 2003) (upholding emotional distress damages based only on testimony), he nevertheless fails to acknowledge that he cannot rely *solely* on his uncorroborated testimony to establish emotional distress. Wantz, 386 F.3d at 834; Cousin, 246 F.3d at 371. Indeed, he has no corroborating evidence whatsoever — no other witnesses or documentary evidence to support his claims. Without such evidence to buttress his assertions, plaintiff's claims cannot go forward. Wantz, 386 F.3d at 834.

In conclusion, although defendant's conduct constituted a technical violation of the FDCPA and RFDCPA, plaintiff's claims of stress do not rise to the level necessary to set forth a viable claim for IIED under either state law or any lower threshold established in some case law. Therefore, for the reasons set forth above, defendant's motion for summary judgment with respect to plaintiff's claim for emotional distress damages is GRANTED.

**D.   Statutory Damages**

Plaintiff seeks statutory damages of $1,000 for defendant's violation of 15 U.S.C. § 1692c(b). The FDCPA provides that, apart from actual damages sustained, an FDCPA claimant may obtain

1  "such additional damages as the court may allow, but not

2  exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A).  In determining

3  the appropriate amount of statutory damages to award, the court

4  considers "the frequency and persistence of noncompliance by the

5  debt collector, the nature of such noncompliance, and the extent

6  to which such noncompliance was intentional."  Id. § 1692k(b)(1).

7       In this case, the court finds that, while defendant

8  technically violated the FDCPA by improperly communicating with

9  third persons, defendant's conduct does not merit the full extent

10  of statutory damages available.  It is clear in this instance

11  that, as set forth above, defendant's conduct did not amount to

12  an intent to harass or abuse.  Defendant reasonably relied on the

13  telephone number given it by its client in placing calls to that

14  number in order to collect a legitimate debt.  Moreover, the

15  wrongful nature of the noncompliance is drastically mitigated by

16  the fact that neither plaintiff, nor any other person who heard

17  the improper messages, called defendant to inform it that

18  plaintiff was not the sole resident of the home.  Based on the

19  foregoing, the court, in its discretion, awards plaintiff $ 1 in

20  statutory damages.

21                              **CONCLUSION**

22       For the foregoing reasons, the court GRANTS plaintiff's

23  motion for partial summary judgment with respect to his claim

24  under 15 U.S.C. § 169c(b) of the FDCPA and his corollary claim

25  under the Cal. Civil Code § 1788.17.  The court also GRANTS

26  defendant's motion for summary judgment as to plantiff's claim

27  under §§ 16952b(2), 1692d and 1692d(5) of the FDCPA, plaintiff's

28  claims under §§ 1788.11(d) and 1788.11(e) of the RFDCPA, and

plaintiff's claim for emotional distress damages under the FDCPA and RFDCPA.[10]  The court DENIES defendant's motion for summary judgment as to plaintiff's claim under Cal. Civil Code § 1788.12(b).  Defendant is ordered to pay plaintiff $1 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).


        IT IS SO ORDERED.

DATED: August 23, 2011

                              _____
                              FRANK C. DAMRELL, JR.
                              UNITED STATES DISTRICT JUDGE

---

[10]    The court notes that the instant order does not apparently resolve the entirety of this case.  Plaintiff did not move for summary judgment as to his claim under Section 1788.12(b) of the RFDCPA and the court denies defendant's motion for summary judgment with regard to this claim.

28