UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRAVIS BRANCO,                           No. 2:10-cv-01242-MCE-EFB

      Plaintiff,

  v.                                     MEMORANDUM AND ORDER

CREDIT COLLECTION SERVICES, INC.,

      Defendant.

----oo0oo----

This matter arises out of Plaintiff, Travis Bronco's ("Plaintiff") motion for attorney's fees and costs.[1]  Defendant, Credit Colection Services, Inc., ("Defendant") opposes the motion.  For the reasons set forth below, Plaintiff's motion is granted.

///

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

1

**BACKGROUND**

In August 2011, the Court granted Plaintiff summary judgment on her claim that Defendant violated Section 1692c(b) of the Fair Debt Collection Practices Act ("FDCPA") by leaving a debt collection message at his parent's home that his mother overheard.[2] Where a court finds that a defendant has violated any provision of the FDCPA, it has discretion to award up to $1,000 in statutory damages. In calculating the appropriate amount of statutory damages, the Court considers: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extend to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). After considering these factors, the Court awarded Plaintiff the nominal amount of $1 in statutory damages, explaining:

> [W]hile Defendant technically violated the FDCPA by improperly communicating with third persons, Defendant's conduct does not merit the full extent of statutory damages available. It is clear in this instance that, as set forth above, Defendant's conduct did not amount to an intent to harass or abuse. Defendant reasonably relied on the telephone number given it by its client in placing calls to that number in order to collect a legitimate debt. Moreover, the wrongful nature of the noncompliance is drastically mitigated by the fact that neither plaintiff, nor any other person who heard the improper messages, called Defendant to inform it that plaintiff was not the sole resident of the home. Based on the foregoing, the court, in its discretion, awards plaintiff $1 in statutory damages.

---

[2] While the Court found that Defendant violated Section 1692c(b) of the FDCPA, the Court denied Plaintiff's motion for summary judgement, and granted Defendant's cross-motion for summary judgment as to Plaintiff's claims that Defendant violated §§ 1692d, 1692b(2), 1692d(5) of the FDCPA and §§ 1788.11(d) and 1788.11(e) of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA").

(Order on Plaintiff's Mot. for Summ. J., filed Aug. 23, 2011, [ECF No. 34], at 26:7-20.)

Moreover, in denying Plaintiff the emotional distress damages he sought, the Court expounded:

> At most, plaintiff alleges conduct that may have inconvenienced plaintiff, if that; significantly, the conduct occurred in only five voice mail messages which were not rude, misleading or abusive. Such conduct is not actionable as an IIED claim.
> . . .
> [T]he only evidence of plaintiff's emotional distress is his own testimony, and this testimony demonstrates that his alleged emotional distress was transitory in nature and of the type not recoverable under the FDCPA.

(Id. at 23:20-24;26:3-6.)

**STANDARD**

The FDCPA contains a fee-shifting provision permitting any Plaintiff to recover attorney's fees against a debt collector that violated the Act. Specifically, 15 U.S.C. § 1692k(a)(3) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of the costs of the action, together with reasonable attorney's fee <u>as determined by the court</u>." (emphasis added).

Similar to other fee-shifting statutes, district "[c]ourts have discretion in calculating reasonable attorney's fees under this statute, and § 1692k(a)(3) authorizes courts to award attorney's fees to the defendant if a plaintiff's suit 'was brought in bad faith and for the purpose of harassment.'"
///

3

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1621 (2010) (emphasis added). However, the award of at least some modicum of attorney's fees is mandatory under the FDCPA when the defendant is found to have violated the act because "congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008) (quoting Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991).

## ANALYSIS

Plaintiff seeks attorney's fees and costs in the amount of $17,655.74. Defendant does not dispute that Plaintiff is entitled to reasonable attorney's fees because the Court found that Defendant committed a violation of the Act. However, Defendant maintains that the Court should reduce Plaintiff's fee award because of Plaintiff's extremely limited success and because the violation was highly technical. Moreover, Defendant contends that Plaintiff's proffered amount of fees and costs are unreasonable and that counsel's hourly rate is excessive for similar attorneys practicing in the Eastern District of California.

In determining a reasonable attorney's fee, courts employ what is known as the "lodestar" method. See Morales v. City of San Rafael, 96 F.3d 359, 363-65 & nn. 8-12 (9th Cir. 1996). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.

McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). After computing the lodestar figure, the district court assesses whether it is necessary to adjust the amount on the basis of any of the twelve so-called Johnson-Kerr factors which were not already taken into account. Id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992); Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988). Many district courts permit downward adjustments in appropriate circumstances in the context of the FDCPA. Jerman, 130 S. Ct. at 1621 n.16; see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C., 574 F.3d 852 (7th Cir. 2009) (permitting downward adjustment for "unnecessary use of multiple attorneys in a straightforward, short-lived [FDCPA] case.")

While determining the lodestar often is difficult and imprecise, the court should provide some indication of how it arrived at its conclusions. See Domingo v. New England Fish Co., 727 F.2d 1429, 1447 (9th Cir.), modified, 742 F.2d 520 (9th Cir. 1984); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (while the district court has discretion in awarding fees, the court must provide "a concise but clear explanation of its reasons for the fee award.").

**A.   Reasonable Hours Expended**

In determining the reasonable hours expended, the party seeking attorney's fees bears the burden of submitting detailed time records which justify the hours spent working on the claims.
///

5

1  Id. at 434 (district court should exclude hours not "reasonably
2  expended").  "Where the documentation of hours is inadequate, the
3  district court may reduce the award accordingly." Id. at 433;
4  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.
5  1986).  Here, Plaintiff provided detailed time sheets attached to
6  Sue Melnick's declaration filed with the Court on September 20,
7  2011.
8       In opposition, Defendant contends that, given the complexity
9  of the case, the lack of voluminous discovery, and the nature of
10 work performed, the number of hours expended is unreasonable.  In
11 reviewing the number of hours expended on this case, the Court
12 finds that the 45.85 hours spent by Plaintiff's counsel and her
13 paralegal were objectively reasonable for a case of this nature.
14 This case began in January 2010, and is not yet completely
15 resolved, almost a year later.  Moreover, the case involved
16 cross-motions for summary judgment, the taking of a deposition,
17 and numerous communications between counsel.  While this case is
18 not one that would normally require a substantial number of
19 hours, the Court finds that Plaintiff's counsel did not spend an
20 inordinate amount of time litigating this case.  Indeed, the
21 Court finds that expending approximately one business week
22 litigating this case is reasonable given the case has lasted
23 almost one year.
24 ///
25 ///
26 ///
27 ///
28 ///

6

**B.    Reasonable Hourly Rate**

In order to decide what rate is "reasonable," courts look at "prevailing market rates in the relevant community." Blum, 465 U.S. at 895; Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992) (overturned on other grounds) (a reasonable hourly rate should be determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity"). With respect to determining the appropriate hourly rate, courts generally calculate a reasonable fee according to prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541 (1984). The general rule is that courts use the rates of attorneys practicing in the forum district, in this case, the Eastern District of California, Sacramento. Gates, 987 F.2d 1392, 1405 (1993); Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991), cert. denied 502 U.S. 899, 112 S. Ct. 275 (1991). The burden is on the fee applicant to produce satisfactory evidence that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n. 11.

///
///
///
///
///

1    Plaintiff's proffered hourly rate of $400 an hour is
2 improper for an attorney of similar experience, working on a case
3 of similar nature, in this district.  Plaintiff's contention that
4 the rates are reasonable as evidenced by the United States
5 Consumer Law Attorney Fee Survey Report is unavailing because it
6 does not take into account the reasonable rate for attorneys in
7 this district.  Conversely, defense counsel June Coleman's
8 declaration provides more appropriate guidance as to what a
9 reasonable rate should be.  Specifically, Ms. Coleman has worked
10 in this district, on similar cases, for at least 12 years, a
11 similar amount of time as Plaintiff's counsel, and charges an
12 hourly rate of $275 per hour for private clients. (Coleman Decl,
13 filed Oct. 06, 2011 [ECF No. 40], at ¶¶ 5, 10, 13.)  Indeed,
14 defense counsel's expertise in issues relating to reasonable
15 rates in similar cases was recognized by a similar district in
16 Tomovich v. Wolpoff & Abramson LLP, 2009 WL 3486693 (2009).
17    Based on the foregoing, the Court finds that the reasonable
18 hourly rates for this case are as follows: $275 per hour billed
19 by Plaintiff's counsel and $100 per hour billed by her paralegal
20 or legal assistant.  These figures represent the prevailing rates
21 for similar work in the relevant community of Sacramento in the
22 Eastern District of California, which is the venue of this
23 action.
24 ///
25 ///
26 ///
27 ///
28 ///

### C. Determining the "lodestar"

After adjusting the hourly rate to take these considerations into account, the total amount of the attorney's fees is $11,471.25.[3] The following is a breakdown of this determination:

| Attorney/ Paralegal/ | Hours | Rate | Total |
|---|---|---|---|
| SAM | 39.35 | $275 | $10,821.25 |
| AKR | 6.5 | $100 | $650 |

Total = $ $11,471.25.

### D. **Johnson-Kerr** Factors

In Gates, 987 F.2d at 1402 n.12, the Ninth Circuit outlined twelve factors the court should evaluate in determining whether to adjust the Lodestar: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Id.

---

[3] Defendant has not asserted an inability to pay the requested attorney's fee or suggested that an award of fees would be a hardship.

9

Where a court concludes that reductions are warranted, it may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." Gates, 987 F.2d at 1399. The court generally presumes that the lodestar amount is reasonable; however, "the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Camacho, 523 F.3d at 978 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 (9th Cir. 2001). In assessing the propriety of lowering the lodestar, "the most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436. This is because, "[a]lthough the plaintiff often may succeed in identifying some unlawful practice or conditions, the range of possible success is vast. That the Plaintiff is a 'prevailing party', therefore, may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. Id.[4] (holding that the District Court improperly failed to consider the relationship between the extent of success and the amount of attorney fee award.)

In this case, the Court has determined that the lodestar amount should be lowered by an "across-the-board percentage cut...in the final lodestar figure" because Plaintiff achieved such minimal success. Gates, 987 F.2d at 1399. Specifically, Plaintiff could not show that he suffered any mental or emotional distress because of the violation.

---

[4] The Court notes that Hensley did not discuss the fee shifting statute contained in the FDCPA; however, it did discuss a nearly identical fee shifting statute applicable to civil rights litigation — 42 U.S.C. § 1988.

10

Moreover, based on the factors set forth in the FDCPA, the Court found that the violation only merited a nominal $1 out of the potential $1000 available for statutory damages.  Finally, as the Court explained in granting nominal damages, the violation was hyper-technical. Moreover, Plaintiff could not show that the five messages left on Plaintiff's voice-mail were intended to harass — the very kind of conduct the FDCPA was enacted to prevent.

Carroll v. Wolpoff & Abramson, 53 F.3d 626 (4th Cir. 1995) is both factually similar and instructive on this issue.  The Carroll court found that defendant committed a technical violation of the FDCPA and awarded Plaintiff only $50 in statutory damages out of a maximum of $1,000.  Thus, although Plaintiff sought $9,783.63 in damages, the district "court, in reliance on Farrar v. Hobby, 506 U.S. 103, 113 (1992), awarded Carroll $500 in light of her limited success in the underlying litigation." Id. at 626-627.  The Appellate Court affirmed, explaining that "the concept of reasonableness — the statutory centerpiece of the § 1692k fee award — itself implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation." Id. at 628-629.  In upholding the de minimus fee award, the Appellate Court noted that "appellant received only $50 in statutory damages...a mere five percent of the amount of statutory damages she sought." Id. at 629.  Thus, the court held, "a fee award of $500 — ten times the amount of statutory damages [the plaintiff] ultimately received — was appropriate." Id.  The court also took into account the fact that plaintiff was unable to obtain the emotional distress damages she initially sought. Id. at 630.

11

Similarly, in this case, the violation was only a technical one; Plaintiff received only $1 in statutory damages, .01 percent of the statutory damages he initially sought; and finally, Plaintiff was not able to obtain the emotional distress damages he initially sought. Thus, the Court finds that it is appropriate to reduce the fee amount by an "across-the-board percentage cut...in the final lodestar figure." Gates, 987 F.2d at 1399. The Court finds that, based on the nature of this case, the amount of success achieved, and the overall effort required, Plaintiff should be awarded 10 percent[5] of the lodestar figure. As set forth above, the final lodestar figure is 11,471.25; thus, Plaintiff is hereby awarded $1,147.13 in attorney's fees.

**E.   Costs**

Plaintiff seeks $615.74 in litigation costs for travel and lodging for the deposition of Plaintiff. Plaintiff appropriately attached the receipts for those costs as exhibits to her declaration. (See Melnick Decl., Ex. B.) Defendant contends that Plaintiff's costs should be reduced because it was unnecessary for her to obtain lodging prior to the deposition in Sacramento because she could have taken a flight from San Diego the morning of the deposition.

---

[5] The Court notes that it would be logical to award .01 percent of the lodestar number, given that was the ratio of statutory damages sought to statutory damages Plaintiff actually obtained. However, as set forth above, an award of attorney's fees is mandatory under the FDCPA. Thus, the Court finds that 10 percent of the lodestar is the appropriate figure to balance the extent of Plaintiff's success with the private attorney general enforcement mechanism of the FDCPA.

However, the Court finds Plaintiff counsel's decision to stay in Sacramento the night before the deposition to avoid missing it because of a delayed or cancelled flight the morning of the deposition was reasonable. (See Melnick Decl., filed Oct. 13, 2011, [ECF No. 45-1], ¶ 1.) Thus, Plaintiff is awarded litigation costs for air travel and overnight lodging in the amount of $615.74.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorney's fees is GRANTED. Plaintiff is hereby awarded attorney's fees in the amount of $1,140.63. Plaintiff is awarded litigation costs in the amount of $615.74. Defendant is directed to pay a total of $1,756.37.

IT IS SO ORDERED.

Dated: November 30, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE